**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-5104**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

RAYMOND T. HOLLOWAY,

                    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Richard L. Williams, Senior District Judge.  (3:08-cr-00213-RLW-1)

Submitted:  February 2, 2010          Decided:  February 26, 2010

Before WILKINSON, NIEMEYER, and DUNCAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Keith N. Hurley, KEITH N. HURLEY, P.C., Richmond, Virginia, for Appellant.  Dana J. Boente, Acting United States Attorney, Michael A. Jagels, Special Assistant United States Attorney, Richmond, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Raymond T. Holloway entered a conditional guilty plea, pursuant to Fed. R. Crim. P. 11(a)(2), to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (2006), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 922(g)(1) (2006). He was sentenced to 130 months of imprisonment. Holloway preserved his right to appeal the district court's denial of his motion to suppress evidence from a traffic stop. Having reviewed the record and the parties' arguments, we affirm.

On March 20, 2008, Richmond, Virginia Police Officer A.J. Catoggio heard loud music emanating from a Ford Expedition driving in a high-drug, high-crime area of Richmond. Officer Catoggio conducted a traffic stop for loud music. The driver, Raymond T. Holloway, rolled down his window and appeared "a little nervous." Holloway produced a restricted license allowing him to travel to and from work. When Officer Catoggio questioned Holloway about his reasons for being in the high-crime area with a restricted license, Holloway responded that he owned an auto shop and was dropping off one of his employees.

While Officer Catoggio was talking with Holloway, two more officers arrived. After Officer Catoggio ran Holloway's license and decided not to issue a summons, all three officers approached Holloway's vehicle. Holloway again "appeared to get

2

a little nervous" and "kept taking his hands, kind of putting them on his lap." Officer Catoggio noticed that Holloway's "breath was increasing," raising the officer's "suspicion . . . a little bit more." However, Catoggio informed Holloway that he was not going to issue a summons, returned Holloway's license, and began to step away from the vehicle.

On further considering Holloway's suspicious behavior, however, Officer Catoggio turned back and asked Holloway to tell him again why he was in a high-drug, high-crime area of Richmond, and whether he had anything illegal in the vehicle. Holloway responded, "There is nothing illegal in this car." When Officer Catoggio asked permission to search the vehicle, Holloway repeated, "There is nothing illegal in this car." Officer Catoggio again asked to search the vehicle, and after Catoggio responded affirmatively to Holloway's question about whether he was free to leave, Holloway granted permission to search the car.

Holloway stepped out of the vehicle and "immediately turned his back to the interior of the car door," his arms "kind of tense to the side . . . as if protecting something." In Officer Catoggio's experience as a police officer, the behavior seemed furtive and strange. Officer Catoggio told Holloway that he intended to pat him down. Holloway refused to be patted down and moved into the traffic lane. Officer Catoggio grabbed

3

Holloway's arm and pulled him out of the roadway. When he reached the side of the road, Holloway told Officer Catoggio that he had a gun. Officer Catoggio handcuffed Holloway and proceeded to pat him down. A .357 caliber revolver, a baggie containing approximately thirty individually wrapped pieces of cocaine base, and $1327 in cash were recovered from Holloway.

Holloway now contends that the seizure and search of his person violated his Fourth Amendment rights. We review the factual findings underlying a district court's ruling on a motion to suppress for clear error and the legal conclusions de novo. United States v. Neely, 564 F.3d 346, 349 (4th Cir. 2009).

The district court found that Holloway consented to Officer Catoggio's search of his vehicle. The court also found that Officer Catoggio grabbed Holloway's arm and pulled him from the roadway for safety reasons, not as a seizure. Finally, the district court concluded that the pat-down search of Holloway was justified based on reasonable suspicion of criminal activity and for officer safety because Holloway had been acting suspiciously and admitted he possessed a firearm.

We agree with the district court's conclusion that Officer Catoggio did not "seize" Holloway. The district court credited Officer Catoggio's testimony that Holloway was stepping into a traffic lane and he grabbed Holloway's arm to protect him

4

from moving vehicles. Given this evidence, the district court did not clearly err when it determined that Holloway was not "seized" at that juncture.

Holloway's second argument is that the pat-down search violated his Fourth Amendment rights. As a general rule, a search or seizure without probable cause is unreasonable, and thus unconstitutional. See Kyllo v. United States, 533 U.S. 27, 32 (2001) (noting that searches without probable cause are "presumptively unconstitutional"). This general rule, however, is "subject to certain exceptions," Brigham City v. Stuart, 547 U.S. 398, 403 (2006), and "[w]e are to approach the Fourth Amendment . . . with at least some measure of pragmatism," Mora v. City of Gaithersburg, 519 F.3d 216, 222 (4th Cir. 2008).

An officer may search the interior of a vehicle incident to a lawful traffic stop if he "possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer[] in believing that the suspect is dangerous and . . . may gain immediate control of weapons" in the vehicle. Michigan v. Long, 463 U.S. 1032, 1049 (1983) (internal quotation marks omitted); see United States v. Holmes, 376 F.3d 270, 276 (4th Cir. 2004). In this case, the inquiry is whether (1) Officer Catoggio could reasonably have believed Holloway was dangerous and, if so, (2) whether Officer Catoggio

5

could reasonably have believed that Holloway could have gained immediate control of weapons.

On the facts recounted above, we agree with the district court that Officer Catoggio's pat-down search of Holloway was justified by reasonable suspicion that Holloway was dangerous and capable of gaining immediate control of weapons. Because Officer Catoggio had a reasonable suspicion that Holloway was dangerous and could gain immediate control of weapons, his pat-down search of Holloway did not violate Holloway's Fourth Amendment rights.

The judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED